**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Vicktoria Pedie, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) | |
| | ) | Case No. 1:18-cv-252 |
| North Star Community Credit Union, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant North Star Community Credit Union's motion for summary judgment filed on January 14, 2020. See Doc. No. 28. Plaintiff Vicktoria Pedie filed a response in opposition to the motion for summary judgment on February 18, 2020. See Doc. No. 35. The Defendant filed a reply brief on March 3, 2020. See Doc. No. 37. For the reasons set forth below, the Defendant's motion for summary judgment is denied.

**I.      BACKGROUND**

This case arises from an alleged violation of the Fair Credit Reporting Act ("FCRA") and common law breach of contract. See Doc. No. 1. Plaintiff Vicktoria Pedie ("Pedie") is a consumer who resides in North Dakota. Defendant North Star Community Credit Union ("North Star") is a credit union bank providing financial services under the laws of North Dakota. As a lender, North Star is considered a "furnisher" under the FCRA. Trans Union is considered a "credit reporting agency" ("CRA") under the FCRA.

In the complaint, Pedie brings three causes of action: two for violating of the Fair Credit Reporting Act (15 U.S.C. § 1681s-2(b)) and one for breach of contract. See Doc. No. 1. In Count

1

I of the complaint, Pedie alleges Trans Union violated 15 U.S.C. § 1681i by failing to follow reasonable procedures to ensure the maximum possible accuracy of Pedie's consumer report. In Count II of the complaint, Pedie alleges North Star violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to her disputed credit information, failing to update and/or remove the inaccurate account history, or in the alternative to report the account as "disputed" by changing the Metro II CCC to "XB." In Count III of the complaint, Pedie alleges North Star failed to comply with material terms of the settlement agreement by failing to send an AUD transmission to the credit reporting agencies ("CRAs"), and therefore breached the agreement between the two parties. Pedie alleges North Star's conduct, actions, and inactions were willful, causing her to suffer monetary damages, reduction to her credit rating, and other emotional damages.

The facts outlined below are undisputed. On July 14, 2015, Pedie obtained a loan from North Star to finance the purchase of a 2014 Mazda CX5 ("Mazda") vehicle. Pedie granted North Star a security interest in the Mazda in order to secure repayment of the loan. Pedie and North Star were both parties to prior litigation involving the secured loan North Star made to Pedie. On or around December 22, 2017, Pedie and North Star entered into a settlement agreement ("Settlement Agreement") relating to this prior litigation. See Case No. 1:17-cv-083. In the prior litigation, Pedie brought a claim against North Star under the Fair Debt Collection Practices Act As part of the Settlement Agreement, North Star was required to delete the Mazda loan tradeline by sending an AUD communication to the credit reporting agencies and a carbon copy to Pedie's attorney.

There are three account numbers related to the Mazda loan with North Star. They are referenced as: L2.1 (the original loan), L6 (the consolidated loan), and L99 (the charged off loan).

Two additional account numbers existed but were unrelated to the Mazda: L2.0 (a Chevy pickup loan) and L2.2 (details regarding this account are unknown). On or about January 4, 2018, North Star deleted the L99 and L2.0 accounts through an AUD communication. On or about September 22, 2018, Pedie submitted a dispute letter to Trans Union, claiming the North Star automobile loan accounts should have been removed from her credit profile. Trans Union forwarded Pedie's dispute information to North Star, including the dispute letter, as required by 15 U.SC. § 1681i(a)(2). At the time of Pedie's dispute, the L6 account was reporting a debt balance of $4912; the L2.2 account was reporting a balance of $0; and the L2.1 account was reporting a balance of $0. See Doc. No. 35. On or about October 15, 2018, North Star responded to Pedie's dispute by deleting the L6 account and verifying account information for the L2.2 and L2.1 accounts. On December 3, 2018, Pedie commenced this action. See Doc. No. 1. On October 3, 2019, Trans Union and Pedie reached a settlement, and Trans Union was dismissed from the case with prejudice. See Doc. No. 25. North Star filed for summary judgment on January 14, 2020. See Doc. No. 28. North Star requests the Court grant summary judgment, while Pedie opposes summary judgment.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); See Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or whether the evidence is one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the Court of the basis for the motion and identifying portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

### III.   LEGAL DISCUSSION

North Star contends it complied with the FCRA by conducting a reasonable investigation with respect to the disputed information as required under 15 U.S.C. § 1681S-2(b)(1)(A). North Star maintains it performed in accordance with the parties' Settlement Agreement by deleting the tradeline and sending an AUD communication to the CRAs. In her complaint, Pedie contends North Star violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information and failing to update and/or remove the inaccurate account history or, in the alternative, to report the account as disputed by changing the Metro II CCC to XB. See Doc. No. 1. Pedie also contends North Star failed to comply with one of the material terms of the Settlement Agreement and breached the parties' Settlement Agreement.

A.   **FAIR CREDIT REPORTING ACT**

North Star maintains summary judgment should be granted on the alleged violation of the FCRA because Pedie does not have any facts supporting the alleged violation of the FCRA.

The Fair Credit Reporting Act was enacted in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Of Am. v. Burr, 551 U.S. 47, 52 (2007). Under the FCRA, the purpose of CRAs is "to require" CRAs to implement "reasonable procedures . . . in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681(b). Section 1681i provides the process CRAs must follow when a consumer disputes the accuracy of the information reported.

The FCRA imposes duties upon CRAs and "the sources that provide credit information to CRAs, called 'furnishers' in the [FCRA]." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009). "'The most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.'" Id. at n.7. The FCRA states, "if the completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer, the person may not furnish the information to any [CRA] without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3). The FCRA places duties on furnishers to report accurate information. See 15 U.S.C. § 1681s-2(a).

The duty to investigate arises only when the furnisher receives a notice of dispute from a CRA. Gorman, 584 F.3d at 1154. If a furnisher receive notice from a CRA that a consumer has disputed information on their credit report, the furnisher is required to conduct a reasonable investigation, review all relevant information the CRA provided, and report the investigation results. See 15 U.S.C. § 1681s-2(b)(1)(A)(C). A furnisher has thirty days to complete its

5

investigation. If additional information accompanies a dispute, a furnisher should review the accompanied information. See Bauer v. Target Corp., No. 8:12-cv-00978-AEP, 2013 WL 12155951, at *7 (M.D. Fla. June 19, 2013). If the additional information provided to the furnisher is not reviewed, it could show unreasonableness of the investigation. Id.  15 U.S.C. § 1681i(a)(1)(A). If the investigation exposes inaccurate or incomplete information, the furnisher must report the results to the CRAs. See 15 U.S.C. § 1681S-2(B)(D)-(E). Additionally, if the consumer's information is disputed, furnishers have a duty to provide a notice of the dispute. 15 U.S.C. § 1681s-2(a)(3). Furnishers are still required to correct any omissions after an investigation under Section1681s-2(b). Saunders, 526 F.3d at 150. If the consumer's disputed information cannot be verified, or the disputed information is inaccurate or incomplete after a reinvestigation, the furnisher is required to modify, delete, or permanently block the reporting of the information to the CRAs. Id.

A furnisher's duty is not triggered if a consumer directly submits a dispute. Id. A private right of action against furnishers for violations under Section 1681s-2(a) does not exist; suit must be brought by States, state agencies, or federal agencies. Id. (citing 15 U.S.C. § 1681s-2(c); See Gorman, 584 F.3d at 1154). Consumers have a private right of action under 15 U.S.C. § 1681s-2(b). If a furnisher does not initially report a debt as disputed, a consumer does not have the ability to privately enforce it. Gorman, 584 F.3d at 1164. A furnisher does not violate the statute if it fails to report a meritless dispute because "reporting an actual debt without noting that it is disputed is unlikely to be materially misleading." Gorman, 584 F.3d at 1163. The reason for this is because "Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished." Gorman, 584 F.3d at 1154.

Many circuits have concluded the FCRA requires a reasonable investigation. Gorman, 584 F.3d at 1157; See Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 617 (6th Cir. 2012). A reasonable investigation is largely dependent on the information provided by the consumer. Id.; See Chiang v. Verizon New England Inc., 595 F.3d 26, 38 (1st Cir. 2010); Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005); Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431-32 (4th Cir. 2004). When determining whether the furnisher acted reasonably, the issue is: "Were the furnisher's procedures reasonable considering the information it was provided regarding the consumer's dispute?" Gorman, 584 F.3d at 1158. Reasonableness is decided on a case-by-case basis. Chiang, 595 F.3d at 38. Each case is determined "primarily by analyzing the extent and detail of information the furnisher obtained from the CRA when the furnisher received notice of the dispute." Id. The Ninth Circuit has stated the plain meaning of "investigation" requires a degree of careful inquiry. Gorman, 584 F.3d at 1157. Reasonableness is usually a question reserved for a jury; however, it may be decided on summary judgment if reasonableness is beyond question. Id. The burden to show the furnisher's investigation was unreasonable is on the plaintiff. Chiang, 595 F.3d at 37.

North Star contends it complied with the FCRA because it completed a reasonable investigation due to the amount of information it received from the CRA and it did not report inaccurate information. Pedie contends North Star did not complete a reasonable investigation because it did not review the letter she submitted with her dispute and was reporting inaccurate information to the CRAs.

### i. Reasonableness of Investigation

North Star contends its investigation was proper and complied with the FCRA. Pedie argues North Star's investigation was unreasonable because North Star failed to perform a reasonable investigation of Pedie's dispute by not reviewing her letter attached to the dispute and North Star's reporting to Trans Union was inaccurate.

Pedie disputed information on her credit report and submitted a dispute letter to Trans Union. See Doc. No. 36-3. Trans Union then forwarded the dispute to North Star. North Star received a dispute from Trans Union along with the dispute letter. See Doc. No. 30-3, p. 9. The burden is on Pedie to show North Star's investigation was unreasonable.

North Star states Pedie's dispute has scant evidence. Courts have held that investigations with scant evidence are usually reasonable if furnishers review the notice of dispute, check the records, review any other pertinent information in the file, and verify the information. See 15 U.S.C. § 1681s-2(b)(1)(A)(C). According to Bambi Thompson's deposition ("Thompson"), a North Star employee, when North Star received the dispute notice, Thompson followed typical protocol when reviewing Pedie's dispute. Thompson was instructed by her supervisor to delete the L6 account and subsequently verified the L2.1 and L2.2 accounts. See Doc. No. 30-2. The L6 account was the consolidated Mazda loan, the L2.1 account was the original Mazda loan, and details regarding the L2.2 account are unknown. According to Thompson's deposition, it is not clear whether she actually viewed and took into account Pedie's dispute letter. See Doc. No. 30-3, p. 44-46. In North Star's reply, it contends the letter was ambiguous and confusing. The letter did not correctly identify the account number or account date. However, Pedie's credit report clearly states the last four account digits, none of which were any of the accounts for the Mazda loan. Further, there was only one account listed on the credit report which matched the date Peide

referenced in her letter.  See Doc. No. 36-2.  While the letter may be confusing, North Star is not relieved of the responsibility to review it.  This Court finds there are genuine issues of material fact regarding North Star's investigation because it is not clear whether North Star reviewed Pedie's dispute letter that accompanied the dispute notice and, therefore, it is not clear whether North Star completed a sufficient investigation.

### ii. Reporting of Inaccurate or Incomplete Information

North Star contends it complied with the statutory requirements, its investigation was reasonable, and it did not report inaccurate information.  Pedie alleges North Star's investigation into Pedie's dispute and reporting to Trans Union as to the results of its investigation were incomplete.

If the letter was not reviewed, North Star could have violated the FCRA because it kept reporting information that was inaccurate or in dispute.  Genuine issues of material fact exist regarding North Star's reporting of Pedie's information.  North Star states pursuant to its investigation, it determined the loan information was accurate.  Pedie disagrees.  North Star was operating under the assumption its investigation was reasonable and the information reported was accurate.  The question of whether inaccurate information was being reported also needs to be presented to the jury, which presents a genuine issue of material fact, and therefore requires denial of the Defendant's motion for summary judgment.

### B. BREACH OF CONTRACT

Pedie alleges North Star failed to send an AUD transmission once the tradeline was deleted, which was a material term in the Settlement Agreement.  North Star contends summary judgment

should be granted on the alleged breach of contract because North Star performed in accordance with the parties' Settlement Agreement by deleting the tradeline on January 4, 2018, through an AUD communication to the CRAs. North Star maintains they did not breach the contract because they performed as how they understood the contract.

Under North Dakota law, the elements of a breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach. WFND, LLC v. Fargo Marc, LLC, 730 N.W.2d 841, 848 (N.D. 2007). The party asserting the breach has the burden to prove all the essential elements. Id. Any ambiguities and uncertainties in a contract should be construed against the individual who drafted the contract. N.D.C.C. § 9-07-19.

Genuine issues of material fact exist regarding breach of the Settlement Agreement. Both parties allege the other drafted the Settlement Agreement and the contract should be interpreted against the party who drafted it. Pedie's attorney maintains he did not receive a copy of the AUD transmission, and North Star maintains one was sent to him after the tradeline was deleted. Nothing in the record supports either contention. There is evidence North Star sent an AUD communication to the CRAs regarding the loans (L99 and L2) that were deleted on January 4, 2018. However, there is nothing in the record to show that North Star did in fact send an AUD communication to Pedie's attorney.

In its memorandum supporting summary judgment, North Star maintains Pedie was the party who drafted and suggested specific contract language and did not further define essential terms. Conversely, Pedie alleges North Star is the party who drafted the Settlement Agreement and cites to an email chain, suggesting North Star's attorneys drafted the Settlement Agreement. The Court finds there are genuine issues of material fact regarding authorship of the Settlement Agreement, and compliance with the Settlement Agreement and, therefore, summary judgment is

inappropriate at this stage because both the Plaintiff and Defendant are at odds on the material facts.

## IV.    **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law.  When the facts before the Court are viewed in a light most favorable to the non-moving party (Pedie); and she is given the benefit of all favorable inferences to be drawn from those facts; there are genuine issues of material fact in dispute as to the reasonableness of North Star's investigation, compliance with the terms of the Settlement Agreement, and which party drafted the Settlement Agreement.  For the reasons set forth above, the Defendant's motion for summary judgment (Doc. No. 28) is **DENIED.**

**IT IS SO ORDERED**

Dated this 14th day of September, 2020.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court